UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NANCY WOOD and JOHN WOOD,

    Plaintiff,

v.

                                                             Case No. 2:23-cv-294-JLB-NPM

GEOVERA SPECIALTY INSURANCE
COMPANY,

    Defendant.
_____/

## ORDER

Plaintiffs Nancy and John Wood ("Plaintiffs" or "the Woods") sue Defendant GeoVera Specialty Insurance Company ("Defendant" or "GeoVera") for breach of an insurance policy. (Doc. 5). Invoking the Court's diversity jurisdiction, the parties have filed cross-motions for summary judgment. (Docs. 25, 27). GeoVera maintains that it has satisfied its contractual obligations because it fully paid the Woods what was due to them under the insurance policy. Plaintiffs maintain, however, that GeoVera did not pay the entire amount of an appraisal award they believe was due under the insurance policy.

After a careful review of the parties' briefing and the summary judgment record, the Court concludes that Defendant GeoVera's Motion for Summary Judgment (Doc. 25) is due to be **GRANTED in part** and the Woods's cross-motion for summary judgment (Doc. 27) is due to be **DENIED**. In addressing the parties' cross-motions for summary judgment, the Court also addresses Defendant's

outstanding motion to strike. (Doc. 38). For the reasons stated herein, the Court **GRANTS** Defendant's motion to strike.

## BACKGROUND

On or about September 28, 2022, Hurricane Ian damaged Plaintiffs' property causing wind and water-related damages. (Doc. 5 at ¶ 7). The parties agree that, at the time of Plaintiffs' loss, GeoVera insured Plaintiffs against certain losses to Plaintiffs' property located in Rotunda West, Florida. (*Id.* at ¶ 5, Doc. 26 at ¶ 1, Doc. 25 at 1, Doc. 27-1 at ¶ 1).

The insurance policy set forth specific coverage for swimming pool enclosures (Doc. 26 at 50), roofs (*id.* at 70–73), and water damage (*id.* at 82), and also contained instructions for appraisals (*id.* at 58). As to the swimming pool enclosures, the policy limited coverage resulting from any peril(s) insured against that are filed within the policy period to **a total of $5,000** as follows:

> **13. Swimming Pool Enclosure(s) And/Or Patio Enclosure(s)**
>
> a. We will pay for direct physical loss to a. "swimming pool enclosure(s) and/or patio enclosure(s)" **resulting from any Peril Insured Against. However, such Coverage is subject to a combined total limit of $5000.** Ordinance or Law Coverage does not apply to coverage provided under this Additional Coverage E.13.
>
> b. **The combined total limit stated above is the most that we will pay in any one policy period without regard to the number of losses, "occurrences'" or claims made and without regard to the number of "swimming pool enclosure(s) and/or patio enclosure(s)" that may be covered under this policy**. Loss in excess of the total combined limit specified above cannot be used toward the fulfillment or reduction of any deductible that may apply as set forth in the Declarations.

  c. This coverage is included in the limit of liability that applies to the covered property, and therefore does not increase the limit of liability under this policy.

(Doc. 26 at 50, Doc. 25 at 4–5) (emphasis added).

As for roof coverage, the policy set forth a payment schedule delineating that GeoVera would cover a percentage of replacement costs based on the age and type of roof for a total not exceeding $10,000.[1] (Doc. 26 at 70–72). Specifically, the coverage provided that a 24-year-old roof or older would receive coverage of 20 percent (for asphalt shingles), 30 percent (for concrete/clay tile or shingles), or 40 percent (for steel, hail-resistant materials). (Doc. 26 at 72).

Next, as to water damage, the policy provided a maximum of $10,000 coverage per policy period:

> WATER DAMAGE LIMITATION ENDORSEMENT
>
> . . .
>
> SECTION I - CONDITIONS
>
>> D. Loss Settlement
>
>> The following is added to D. Loss Settlement:
>
>>> 3. Subject to the conditions in Paragraphs 1. and 2. above, **payment for covered loss caused by or resulting from "water damage" will be limited to a maximum of $10,000 per policy period**. This sublimit is the most we will pay regardless of the number or type of coverages or property that may apply, including Loss of Use, or the number of "occurrences" or claims made. This sublimit is included in and does not increase the limit of liability or any special limit or

---

[1] The policy stipulated that the coverage shall apply whether or not the loss was caused by wind. (Doc. 26 at 70).

3

>   sub limit of liability that applies to the property coverages or damaged covered property.

(Doc. 26 at 82, Doc. 25 at 7) (formatting altered and emphasis added).

Lastly, regarding appraisals, the insurance policy provided that "if [Plaintiffs] and [GeoVera] fail to agree on the amount of loss, either may demand an appraisal of the loss." (Doc. 26 at 58). The policy further provided that, if there is an appraisal, GeoVera "retain[s] the right to apply the policy coverages, terms, and conditions under this policy to any appraisal award." (*Id.*). The policy stated that the appraisal award must describe "[t]he types or kinds of damage to each item of property" and "[t]he extent of the damage to each item of property." (*Id.* at 58).

Following damage caused by Hurricane Ian, Plaintiffs filed a claim with GeoVera, which then inspected the property. (Doc. 26 at ¶ 3, Doc. 27-1 at ¶ 3). GeoVera's adjuster found that Plaintiffs incurred a $11,212.52 loss for "pool enclosures." (Doc. 37-5 at 5). GeoVera then tendered $5,000 to Plaintiffs, citing the policy limit to cover losses associated with the pool enclosures. (*Id.*). Next, GeoVera's adjuster determined that Plaintiffs had damage to their asphalt shingled roof that would cost $15,338.87 to replace. (*Id.,* Doc. 27-1 at 25–26). The adjuster determined that Plaintiffs' shingled roof was 24 years old based on property records. (Doc. 37-5 at 4–5). The adjuster then applied the 20 percent coverage policy for asphalt shingled roofs, as noted above, and GeoVera tendered $3,067.77—20% of $15,338.87—for the replacement of the roof. (*Id.* at 5).

Lastly, the adjuster assessed the damage to the interior of Plaintiffs' home, determining that Plaintiffs had $25,863.33 in water damage. (*Id.*). GeoVera

4

tendered the $10,000 to the Plaintiffs, citing the policy limit for water damage. (*Id.*).

Plaintiffs disagreed with the amount paid by GeoVera and requested an appraisal. (*Id.* at ¶ 4, Doc. 27-1 at ¶ 4). Following appraisal, an appraisal award was issued as follows:

> Dwelling: $17610.93 (RCV) $16518.47 (ACV)
> Coverage B: $14156.96 (RCV) $14025.49 (ACV)
> Coverage C NOT APPRAISED
> Coverage D NOT APPRAISED
> **Pool Enclosure $12695.18 (RCV) $11896.69 (ACV)**
> L and O Roof $4444.98 (RCV) $4444.98 (ACV)
> **Dwelling Interior $52282.23 (RCV) $49263.87 (ACV)**
> **Dwelling Roof $21082.52 (RCV) $19533.71 (ACV)**
> Mold $12217.85 (RCV) $12217.85 (ACV)

(Doc. 25 at 3-4, Doc. 26 at ¶ 5, Doc. 27-1 at ¶ 5, Doc. 27-1 at 149) (emphasis altered). The appraisal award contained a statement stating that the above award "remain[s] subject to the applicable policy language and exclusions, as well as deductible obligations of the insured." (Doc. 37-7).

In its summary judgment motion, GeoVera contends that it has paid the maximum coverage allowable under the policy for (1) the pool enclosures, (2) the roof, and (3) the interior damage to Plaintiffs' dwelling. (Doc. 25 at 5–7). Plaintiffs responded and filed a cross-motion for summary judgment, arguing that (1) the appraisal award is binding under Florida law and GeoVera must therefore pay the entire award, and (2) the cause of damage to the dwelling interior is wind, rather than water, and GeoVera must pay $52,282.23 to cover damages. (Doc. 27).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A district court must grant a motion for summary judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Essex Ins. Co. v. Barrett Moving & Storage, Inc.*, 885 F.3d 1292, 1299 (11th Cir. 2018) (citation and internal quotation marks omitted). An issue is "genuine" if a rational trier of fact, viewing all of the record evidence, could find in favor of the nonmoving party. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (citation omitted). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004) (citations omitted).

In ruling on a motion for summary judgment, courts must "resolve all ambiguities and draw reasonable factual inferences from the evidence in the non-movant's favor." *Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1268 (11th Cir. 2014) (citation and internal quotation marks omitted).

## DISCUSSION

**I.     The Appraisal Award**

Plaintiffs allege in their cross-motion for summary judgment that Defendant "is bound by the award entered in contractual appraisal, and a trial court may not consider evidence beyond the face of the appraisal award to modify or reduce the award." (Doc. 27 at 1).  Essentially, Plaintiffs argue that GeoVera may not apply the coverage limits to the appraisal award and that GeoVera must therefore pay the entire award.  The Court is unpersuaded.

In diversity cases such as this, "a federal court applies the substantive law of the forum state."[2] *Ins. Co. of N. Am. v. Lexow*, 937 F.2d 569, 571 (11th Cir. 1991).  Thus, the Court here must apply Florida law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).  Under Florida law, the interpretation of an insurance contract is a matter of law. *Dahl-Eimers v. Mut. of Omaha Life Ins. Co.*, 986 F.2d 1379, 1381 (11th Cir. 1993) (citing *Sproles v. American States Ins. Co.,* 578 So.2d 482, 484 (Fla. 5th DCA 1991)) (citation omitted).  Also, courts interpreting Florida law construe insurance contracts according to their plain meaning. *Garcia v. Fed. Ins. Co.*, 473 F.3d 1131, 1135 (11th Cir. 2006) (quoting *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)); *Bioscience W., Inc. v. Gulfstream Prop. & Cas. Ins. Co.*, 185 So. 3d 638, 640 (Fla. 2d DCA 2016)) ("In interpreting an insurance contract, we are bound by the plain meaning of the contract's text."

---

[2] The Supreme Court of Florida has held that the decisions of Florida's district courts of appeal "represent the law of Florida unless and until they are overruled by [the Supreme Court of Florida]." *Pardo v. State*, 596 So. 2d 665, 666 (Fla. 1992).

7

(quoting *State Farm Mut. Auto. Ins. Co. v. Menendez*, 70 So. 3d 566, 569 (Fla. 2011))). "The scope of insurance coverage is defined by the language and the terms of the insurance policy, and where the language of the policy is plain and unambiguous, the contract must be enforced as written." *Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of Am.,* 483 F. Supp. 3d 1189, 1191 (M.D. Fla. 2020) (citing *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 734–35 (Fla. 2002)). Florida courts "may not rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." *Intervest Const. of Jax, Inc. v. Gen. Fid. Ins. Co.*, 133 So. 3d 494, 497 (Fla. 2014) (quotation omitted).

In Florida, insurers are bound to pay an appraisal award unless they are able to "avoid[ ] [it] in some legally recognized way." *Hanover Fire Ins. Co. v. Lewis*, 10 So. 297, 303 (Fla. 1891). For instance, an insurer seeking to challenge an appraisal award may raise "any coverage defenses which may be available to it." *State Farm Fire & Cas. Co. v. Licea*, 685 So. 2d 1285, 1287 (Fla. 1996) (citation omitted). The term "'[a]ppraisal award' is really a misnomer because the appraisal panel only determines the amount of loss, not an insured's entitlement to any damages." *Citizens Prop. Ins. Corp. v. Mango Hill #6 Condo. Ass'n, Inc.*, 117 So. 3d 1226, 1227 n.1 (Fla. 3d DCA 2013). Indeed, courts have recognized where clear and unambiguous language states that the award was made without any consideration of deductible amounts, prior payments, or any terms, conditions, or exclusions, that it does not reflect the amount owed to a plaintiff under the policy. *See Sands on the Ocean Condo. Ass'n, Inc. v. QBE Ins. Corp.*, No. 05-14362-CIV, 2009 WL 790120 at *

2–3 (S.D. Fla. Mar. 24, 2009); *see also Liberty American Ins. Co. v. Kennedy,* 890 So. 2d 539, 541–42 (Fla. 2d DCA 2005) (explaining that "the submission of [a] claim to appraisal does not foreclose . . . challenging an element of loss as not being covered by the policy").

A challenge of insurance coverage is exclusively a judicial question. *Licea*, 685 So. 2d at 1287. After all, only "[i]f a court decides that coverage exists" will "the dollar value agreed upon under the appraisal process . . . be binding upon both parties" under a policy. *Id.* at 1287–88 (emphasis added).

The division of responsibility between the appraisers and the Court is clear. First, where an insurer admits there is a covered loss, and there is a disagreement regarding the amount of loss, appraisers may be appointed. *First Protective Ins. Co. v. Hess*, 81 So. 3d 482, 485 (Fla. 1st DCA 2011). Second, the appraisers determine the amount of loss, "which includes calculating the cost of repair or replacement of property damages, and ascertaining how much of the damage was caused by a covered peril." *Citizens Prop. Ins. Corp. v. River Manor Condo. Ass'n, Inc.*, 125 So. 3d 846, 854 (Fla. 4th DCA 2013). Third, the Court will then rule on whether a coverage defense applies. *Hess*, 81 So. 3d at 485.

Here, the appraisal provision provides that, if there is an appraisal, "[GeoVera] retain[s] the right to apply the policy coverages, terms, and conditions under this policy to any appraisal award." (Doc. 26 at 58). Simply put, this sentence clarifies that "the insurer has not thereby abandoned any coverage defense which may be available to it." *Licea*, 685 So. 2d at 1287.

9

Further, GeoVera sent a letter to Plaintiffs accepting their demand for an appraisal. (Doc. 37-6). In that letter, GeoVera stated that it does not "by any continued investigation of this claim, by this letter or otherwise waive, nor does it intend to waive, any of the terms or conditions, provisions, limitations or exclusions, of neither the policy. . . nor any of its rights or defenses under applicable law." (*Id.* at 3). And, the appraisal award contained a statement that the award "remain[s] subject to the applicable policy language and exclusions, as well as deductible obligations of the insured." (Doc. 37-7 at 1). Accordingly, the Court finds that the language is clear and unambiguous and that the appraisal award does not require GeoVera to pay the full amount specified by the appraisal in all circumstances. *See Mango Hill #6 Condo. Ass'n, Inc.*, 117 So. 3d at 1227 n. 1; *see also Sands on the Ocean Condo. Ass'n, Inc.*, 2009 WL 790120 at *2–3; *see also Kennedy,* 890 So. 2d at 541–42.

Moreover, the policy unambiguously sets forth the policy limits for swimming pool enclosures. It states in no uncertain terms that swimming pool enclosures are "subject to a combined total limit of $5,000," and this limit "is the most that [GeoVera] will pay in any one policy period without regard to the number of losses. . . ." (Doc. 26 at 50). Defendant tendered the $5,000 limit. (Doc. 37-5 at 5). Also, Plaintiffs do not dispute that Defendant tendered the limit. (*See* Docs. 25, 27, & 37 at 8–9). The Court accordingly concludes that Defendant GeoVera has established that no genuine dispute exists regarding payments tendered to Plaintiffs for the

10

swimming pool enclosures. The bottom line is that the policy limit of $5,000 for damage to the pool enclosure applies, and such policy limit was paid to Plaintiffs.

As for the roof damage, the policy clearly provided that GeoVera would pay 20% of the cost for replacement of Plaintiffs' asphalt shingled roof for a total not to exceed $10,000. (Doc. 26 at 70–72, Doc. 37-5 at 5). It appears that GeoVera sent Plaintiffs a "coverage letter" stating the amounts it paid under the policy.[3] (Doc. 37-5). In that coverage letter, GeoVera's adjuster determined that Plaintiffs sustained $15,338.87 in total losses to their roof. (*Id.* at 5). The coverage letter then stated that GeoVera tendered 20% of the loss to Plaintiffs equaling a depreciated amount of $3,067.77 because the shingled roof was 24 or more years old. (*Id.*; Doc. 25 at 6). But the appraisers determined that the loss to Plaintiffs' roof totaled $21,082.52. (Doc. 37-7). The appraisal value is binding on the Court and the parties. Thus, GeoVera was required to pay 20% of $21,082.52, the loss as determined by the appraisers, rather than the losses determined by the adjuster's estimate, because the appraisal value is binding on the Court. *Licea*, 685 So. 2d at 1287–88 (explaining that "[i]f a court decides that coverage exists" for a claim under a policy, "the dollar value agreed upon under the appraisal process [will] be binding upon

---

[3] Neither GeoVera's motion (Doc. 25 at 6) nor its statement of undisputed facts (Doc. 26 at 4) stated how much GeoVera paid Plaintiffs for the roof replacement. Rather, GeoVera generally asserts that it "paid the full amount due pursuant to the policy endorsement". (Doc. 25 at 6). And, most concerning, GeoVera did not provide any citation or otherwise direct the Court to the record showing how much it paid under the policy. (*Id.*). To determine the amount GeoVera paid to Plaintiffs, the Court had to thoroughly comb the record and spend an exorbitant amount of time and resources in finding this information.

11

both parties"). Because GeoVera has not shown that it paid 20% of the binding appraisal award for roof losses, GeoVera is not entitled to summary judgment as to payments tendered for the roof. Accordingly, GeoVera's motion for summary judgment as to the roof payments is denied.

## II. The Interior Damage

Lastly, the parties disagree as to whether the interior damage to Plaintiffs' home was caused by water or wind. (Doc. 37 at 9–11, Doc. 25 at 7, Doc. 27 at 2–3). GeoVera contends that their $10,000 payment to Plaintiffs is sufficient under the policy's water damage endorsement because the interior of Plaintiffs' home was damaged by water. (Doc. 25 at 7 (referencing Doc. 26 at 82)). Plaintiffs respond, contending that their loss was caused by wind and that GeoVera is, therefore, liable for the full amount of the loss to the interior, which the appraisers determined to be $52,282.23. (Doc. 27 at 2–3, Doc. 37-7). The Court finds that genuine issues of material fact exist as to whether the interior damage to Plaintiffs' home was caused by wind or water.

As noted, a challenge of coverage is exclusively a judicial question. *Licea*, 685 So. 2d at 1287. Under settled Florida law, appraisal determines only the amount of loss and the Court (or jury) determines issues of coverage and liability. *State Farm Florida Ins. Co. v. Hernandez*, 172 So. 3d 473, 476 (Fla. 3d DCA 2015). But the issue of causation may be either one of coverage for the Court, or one of the amount of loss for the appraisers. *People's Tr. Ins. Co. v. Garcia*, 263 So. 3d 231, 234 (Fla. 3d DCA 2019). As to the former, a court will decide the issue of causation "when an

insurer wholly denies that there is a covered loss and an amount-of-loss question for the appraisal panel when an insurer admits that there is covered loss, the amount of which is disputed." *Id.* (citing *Johnson v. Nationwide Mut. Ins. Co.*, 828 So. 2d 1021 (Fla. 2002)). As to the latter, causation is a question for the appraisers "when an insurer admits that there is a covered loss, the amount of which is disputed." *Johnson,* 828 So. 2d at 1022.

Here, GeoVera admits that there is a covered loss as to the interior of Plaintiffs' home. (Doc. 25 at 7). Specifically, GeoVera does not deny that damage to the interior is covered under the policy, but instead contends that the coverage of the interior is limited to $10,000 because of the *water damage* endorsement. (*Id.*).

A Florida appellate court considered a similar case, where homeowners sought to recover from their insurer for breach of contract for the insurer's denial of coverage for roof damage following a tornado. *See People's Tr. Ins. Co. v. Tracey*, 251 So. 3d 931 (Fla. 4th DCA 2018). In *Tracey*, the insureds filed a claim for damage caused by wind from a tornado. *Id.* at 932. The insurer agreed that the interior of the insureds' home was covered under the policy, but the insurer declined to pay to replace the insureds' roof. *Id.* Specifically, the insurer declined to pay to replace the roof because it claimed that the damage was the result of "wear and tear," which was not covered under the policy. *Id.* at 932. The Fourth DCA noted that "the insurer admitted coverage for the interior damage, but declined to repair the roof." *Id.* at 933. In short, the Fourth DCA held that the insurer did not "wholly deny" coverage to the insureds because the insurer agreed to provide

13

coverage for the home's interior, but not for the roof. *Id.* Because of this, the *Tracey* court held that the issue of causation—*i.e.,* whether the roof was damaged by wind or normal wear and tear—was one for the appraisal panel. *Id.* Like *Tracey*, the Court here similarly finds that the question of whether the interior of the Plaintiffs' home was damaged by water or wind is a question for the appraisal panel. To be clear, GeoVera is not wholly denying coverage to the Plaintiffs. GeoVera is merely arguing that the home's interior is limited to the $10,000 policy limits contained in the water damage endorsement. Thus, the Court looks at whether the appraisal panel determined the cause of the interior damage.

The parties dispute whether the appraisal panel found that the interior damage to Plaintiffs' home was caused by water or wind. Upon review of the appraisal award (Doc. 37-7), nothing within the four corners of the appraisal award suggests that the appraisal panel determined *the cause of* the interior damage. Because the appraisal award letter is unclear, Plaintiffs and Defendant submitted competing affidavits to argue their respective positions. (Docs. 37-1 & 27-1 at 5–8).

First, Plaintiffs submitted an affidavit from Thomas Trotter, a licensed public adjuster retained by Plaintiffs to assist them in their claim. (Doc. 27-1 at 5–8). Mr. Trotter reviewed the report of GeoVera's engineer and stated that Mr. Trotter believed that the interior damage to Plaintiffs' house was caused by wind. (*Id.* at 7–8). GeoVera has moved to strike Mr. Trotter's affidavit, claiming that Mr. Trotter was not an appraiser and, therefore, he could not attest to what the appraisers determined. (Doc. 38).

14

Next, GeoVera asks this Court to grant summary judgment as to the cause of the interior damage, submitting an affidavit from Bree McCorkle, who served as an appraiser for GeoVera and participated on the appraisal panel. (Docs. 37-1, 37-7). Ms. McCorkle, who signed the appraisal award, stated in her affidavit:

> The appraisal award awarded $52,282.23 RCV for "Dwelling Interior". **This entire amount was for water damage.** We did not award any money for "Dwelling Interior" for damage not caused by water.

(Doc. 37-1 at ¶ 4) (emphasis added).

This Court finds that neither Mr. Trotter's affidavit (Doc. 27-1 at 5–8) nor Ms. McCorkle's affidavit (Doc. 37-1) can be considered because the Court cannot look beyond the face of an appraisal award and consider extrinsic evidence. *See Baptist Coll. of Fla., Inc. v. Church Mut. Ins. Co., SI*, No. 5:22-CV-158-MW/MJF, 2023 WL 4358781 at *5 (N.D. Fla. Mar. 7, 2023) (holding that the plaintiff cannot introduce extrinsic evidence meant to modify an appraisal award); *see also First Protective Ins. Co. v. Hess*, 81 So. 3d 482, 486 (Fla. 1st DCA 2011) ("[A] trial court may not look beyond the face of an appraisal award and consider extrinsic evidence to determine the basis for the award.").

Further, the clear and unambiguous language of the insurance policy states that the appraisal award must describe "[t]he types or kinds of damage to *each* item of property" and "[t]he extent of the damage to *each* item of property." (Doc. 26 at 58) (emphasis added). Here, the appraisal award does not clearly state whether the damage to the home's interior was due to wind

15

or water.  The insurance policy unambiguously states that the appraisal award must describe the types or kinds of damage to *each* item of property. (*Id.*).  Plaintiffs submitted a claim intake form noting that "[t]here are water spots in the ceiling of the living room[]" and "[t]here is water damage in the closet on one end of [the] third bedroom."  (Doc. 37-4 at 1).  The appraisal award did not list the types of damage as to each loss.  Instead, in the award cover letter, the appraisers generally listed that the type of loss for the overarching claim precipitating the filing of the claim was "Wind Damage." (Doc. 27-1 at 151).  The Court finds that, at the very least, it is unclear whether the interior damage to Plaintiffs' dwelling was caused by wind or water.  Accordingly, the Court finds that a genuine issue of material fact exists.

     Lastly, Plaintiffs are mistaken in their contention that the Court cannot strike Mr. Trotter's affidavit (Doc. 41 at 1–2).  *See Story v. Sunshine Foliage World, Inc.*, 120 F. Supp. 2d 1027, 1030–31 (M.D. Fla. 2000) (holding that the court may strike inadmissible portions of an affidavit in support of, or in opposition to, a motion for summary judgment).

     Accordingly, Defendant's Motion to Strike (Doc. 38) is granted, Defendant's Motion for Summary Judgment (Doc. 25) is denied as to Defendant's claim that it has fully paid Plaintiffs for interior damage to their home, and Plaintiffs' Motion for Summary Judgment (Doc. 27) is denied as to Plaintiffs' claim that the interior of the home was damaged only by wind.

## CONCLUSION

For the reasons set forth above, it is **ORDERED**:

(1) Defendant's Motion for Summary Judgment (Doc. 25) is **GRANTED in part** to the extent that Defendant GeoVera has established that no genuine dispute exists regarding payments tendered to Plaintiffs for swimming pool enclosures and **DENIED in part** as to any other relief sought.

(2) Plaintiffs' Motion for Summary Judgment (Doc. 27) is **DENIED**.

(3) Defendant's Motion to Strike (Doc. 38) is **GRANTED**.

(4) The Court strongly suggests that the parties reconsider whether a settlement is in their best interests.  If the parties notify the Court in a joint filing that they would like to engage in good faith settlement negotiations, the Court will both stay the deadlines in this case and offer a U.S. Magistrate Judge to conduct a settlement conference at no cost to the parties.  Within two weeks from the filing date of this order, the parties are to file a joint notice requesting such.  The notice is not to identify if a particular party opposes a settlement conference.  It is simply to note that the parties jointly request a settlement conference, and that the parties jointly request the Court to appoint a U.S. Magistrate Judge to conduct a settlement conference.  Having carefully reviewed the entire summary judgment record and the applicable law, the Court urges the parties to consider amicably settling this matter in

short.  That said, the Court will proceed in whatever manner the parties request.

**ORDERED** in Fort Myers, Florida on August 26, 2024.

*/s/ John L. Badalamenti*
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE